IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALEXANDER JONES,[1] | § | |
| | § | No. 541, 2015 |
| Petitioner Below, | § | |
| Appellant/Cross-Appellee, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN12-04851 |
| ADRIANA JONES, | § | Petition Nos. 14-17806 and |
| | § | 15-09995 |
| Respondent Below, | § | |
| Appellee/Cross-Appellant. | § | |

Submitted: May 6, 2016
Decided: August 2, 2016

Before **STRINE**, Chief Justice; **VAUGHN**, and **SEITZ**, Justices.

Upon Appeal from the Family Court of the State of Delaware: **AFFIRMED in part and REMANDED**.

Alexander Jones, Franklinville, New Jersey, *pro se*, Petitioner Below, Appellant.

Gary L. Smith, Esquire, Newark, Delaware, for Respondent Below, Appellee, Adriana Jones.

**SEITZ**, Justice:

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

## I. Introduction

Alexander Jones ("Husband") filed this appeal from a July 29, 2015 Family Court order that entered the parties' stipulation on property division, awarded Adriana Jones ("Wife") alimony, and ordered Husband to pay Wife an additional monthly amount for unpaid interim alimony. Husband also appeals from the Family Court's September 9, 2015 order denying the parties' motions for reargument. We find most of Husband's arguments on appeal to be without merit and affirm, but remand for further proceedings on Husband's claims regarding Wife's medical and health insurance expenses.

## II. Facts And Procedural Background

The parties were married on November 24, 1997, separated on July 1, 2012, and divorced on December 9, 2014. They are the parents of three children. The Family Court required Husband to pay $2,697 in interim child support, which was later reduced to $1,667 per month in the permanent award retroactive to June 26, 2014. The Family Court also granted Wife's motion for interim alimony and ordered Husband to pay $1,555 per month, effective January 1, 2015. At Husband's request, the Family Court ordered Wife to provide Husband with documentation of her health insurance expense, estimated to be $700 per month, within thirty days.

The Family Court conducted a hearing on matters ancillary to the divorce. Before the hearing, the parties resolved the division of their property, leaving only alimony to be decided at the hearing. Both Husband and Wife were represented by counsel at the hearing. The Family Court heard testimony from Husband, Wife, Wife's landlord, and Wife's former brother-in-law.

In a July 29, 2015 decision the court ordered Husband to pay Wife monthly alimony of $1,748. The Family Court also found that Husband had failed to pay interim alimony as required by the court's earlier order, and ordered Husband to pay $200 per month until the owed amount was paid in full. The court denied the parties' cross-motions for reargument in a letter and order dated September 9, 2015.

Husband filed a *pro se* appeal from the Family Court's July 29, 2015 and September 9, 2015 orders. Wife filed a cross-appeal, but did not make any arguments in her answering brief for reversal of any of the Family Court's rulings.

## III. Standard Of Review

This Court's review of a Family Court decision includes a review of both the law and the facts.[2] We review conclusions of law *de novo*.[3] We will not disturb factual findings on appeal unless they are clearly erroneous.[4] The Family Court's decision on alimony "will not be disturbed on appeal if: (1) its findings of fact are supported by the record; (2) its decision reflects due consideration of the statutory factors found in 13 *Del. C.* § 1512; and (3) its explanations, deductions and inferences are the product of a logical and deductive reasoning process."[5] We will not substitute our opinion for the inferences and deductions of the trial judge if those inferences are supported by the record.[6]

---

[2] *Mundy v. Devon*, 906 A.2d 750, 752 (Del. 2006).
[3] *Id.*
[4] *Id.*
[5] *Castle v. Castle*, 2013 WL 2722185, at *2 (Del. Jun. 11, 2013).
[6] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

3

## IV.    Analysis

Husband's arguments on appeal are summarized as follows: (i) Wife's cohabitation barred her from collecting alimony; (ii) Wife's medical and health insurance expenses were unreasonable and unsupported by the record; (iii) Wife has not maximized her earnings; (iv) the duration of Husband's alimony obligation was unreasonable; (v) the Family Court erred in treating the Wife's bachelor's degree as irrelevant; and (vi) the Family Court miscalculated Husband's earnings.

Turning to the first issue on appeal, Husband argues that the Family Court erred in ordering alimony because Husband offered evidence at the ancillary hearing that Wife cohabitated with another man during the summer of 2014. The alimony statute, 13 *Del. C.* § 1512, provides as follows:

> Unless the parties agree otherwise in writing, the obligation to pay future alimony is terminated upon the death of either party or the remarriage or cohabitation of the party receiving alimony. As used in this section, "cohabitation" means regularly residing with an adult of the same or opposite sex, if the parties hold themselves out as a couple, and regardless of whether the relationship confers a financial benefit on the party receiving alimony. Proof of sexual relations is admissible but not required to prove cohabitation. A party receiving alimony shall promptly notify the other party of his or her remarriage or cohabitation.[7]

The Family Court concluded it was unnecessary to decide if Wife had cohabitated in 2014 because:

> [e]ven if she had, the Court finds that she has not resided with him since August 2014, or eleven months prior to the alimony hearing. The dissolution of Wife's relationship with Mr. [] was clearly not an attempt to deceive the Court for the purposes of her alimony claim. The Court finds

---

[7] 13 *Del. C.* § 1512(g).

4

that Wife's alimony claim is not precluded and Wife may be awarded alimony if the Court finds her to be a dependent party and after considering the relevant statutory provisions enumerated in 13 *Del. C.* § 1512(c).[8]

In its later order denying Husband's motion for reargument, the Family Court held that "at the time Wife cohabitated with Mr. [], she was not an 'alimony recipient' and she did not terminate the relationship in an effort to deceive the Court in order to be awarded alimony."[9]

On appeal Husband relies on *Hubbs v. Hubbs*[10] and other Family Court cases where a spouse was denied alimony due to cohabitation at the time of the alimony hearing.[11] In *Hubbs*, the Family Court held that the wife, who had cohabitated with another man until one week before the alimony hearing, could not receive alimony because "[o]nce an alimony applicant is found to have cohabitated with another adult,

---

[8] *Jones v. Jones*, Order at 5 (Del. Fam. Ct. July 29, 2015).

[9] *Jones v. Jones*, Letter and Order at 5 (Del. Fam. Ct. Sept. 9, 2015). The Family Court awarded Wife interim alimony from January 1, 2015 and awarded her permanent alimony from August 15, 2015. For purposes of terminating alimony under § 1512(g), this Court has not drawn a distinction between interim alimony and permanent alimony. *See, e.g.*, *Sullivan v. Sullivan*, 2015 WL 1880383, at *3 (Del. Apr. 21, 2015) (holding that § 1512(g) required the Family Court to determine when the wife, who cohabitated with a boyfriend while receiving interim alimony, began the cohabitation and to credit the husband for all alimony paid after the start of the cohabitation). In any event for the reasons explained in this opinion the distinction is irrelevant here because the cohabitation was alleged to have occurred and to have ceased before the award of interim alimony.

[10] 1993 WL 331916 (Del. Fam. Ct. May 4, 1993).

[11] *See, e.g.*, *J.C. v. S.C.*, 2005 WL 3514308, at *1 (Del. Fam. Ct. Aug. 31, 2005) (denying wife's request for alimony where wife was cohabitating with boyfriend at time of ancillary hearing); *K.A.M. v. D.G.M.*, 2005 WL 3593579, at *3 (Del. Fam. Ct. June 13, 2005) (denying wife's request for interim alimony where wife was cohabitating with boyfriend at time of hearing); *Eric S.W. v. Stacey E.W.*, 1997 WL 878700, at *2 (Del. Fam. Ct. May 9, 1997) (granting husband's petition to terminate interim alimony obligation where wife began cohabitating with boyfriend after interim alimony was awarded).

5

that person is barred from receiving alimony thereafter."[12] The *Hubbs* court also held that the "fact that the cohabitation may have ceased is irrelevant under the wording of" the alimony statute.[13] The Family Court distinguished the case before it from *Hubbs*, noting that Wife had not resided with her boyfriend until just before the alimony hearing and was not attempting to deceive the Family Court. The Family Court also distinguished the other cases cited by Husband because they involved spouses who were cohabitating with others at the time of the alimony hearings.[14]

The Family Court relied instead on *Sylvester v. Monroe*[15] and *In re Pizzichili*,[16] where spouses were not barred from receiving alimony under the alimony statute. In *Sylvester*, the husband argued that § 1512(g) barred his wife from receiving alimony because she had cohabitated with him after their divorce, but before the Family Court awarded her alimony.[17] This Court disagreed, and held that under the plain language of § 1512(g), alimony is terminated only when a "party receiving alimony" begins to cohabitate or is cohabitating when applying for alimony.[18] Because the wife in *Sylvester* was not a "party receiving alimony" when she was cohabitating, and stopped cohabitating before alimony was ordered, § 1512(g) did not apply.[19] In *Pizzichili*, the Family Court relied upon *Sylvester* and held that § 1512(g) did not bar the wife from receiving alimony

---

[12] *Hubbs*, 1993 WL 331916, at *4; *id.* at *5 ("As harsh as this result is in this particular case, this Court must apply the law and give effect to the intent of the legislature.").

[13] *Id.* at *4.

[14] *See supra* note 11.

[15] 1995 WL 319183 (Del. May 19, 1995).

[16] 1999 WL 33100141 (Del. Fam. Ct. Nov. 17, 1999).

[17] 1995 WL 319183, at *1.

[18] *Id.* at *2.

[19] *Id.*

6

where the wife was not a "party receiving alimony" when she was cohabitating and the cohabitation ended two months before the alimony hearing.[20]

As the foregoing discussion shows, there is some confusion in the Family Court decisions applying § 1512(g). To resolve the conflicting cases, we turn to the express language of the statute and our decision in *Sylvester*. Both the statute and the *Sylvester* decision require that a spouse be *receiving* alimony before alimony can be terminated due to cohabitation. Also, the spouse cannot be involved in "an attempt to deceive the Court for the purpose of her alimony claim."[21]

The Family Court in this case correctly applied the statute and our decision in *Sylvester*. The court found that Wife was not a "party receiving alimony" at the time of her alleged cohabitation, the cohabitation ended months before the alimony hearing, and Wife was not attempting to deceive the court by terminating cohabitation shortly before the alimony hearing. Thus the Family Court properly found that Wife was not disqualified from receiving alimony due to cohabitation.[22]

---

[20] *Pizzichili*, 1999 WL 33100141, at *3; *see also M.O. v. J.C.C.*, 2010 WL 4278285, at *1–2 (Del. Fam. Ct. Aug. 24, 2010) (holding wife's previous cohabitation did not bar her from receiving alimony under § 1512(g) because cohabitation ended before she received alimony and ending of cohabitation was not effort to deceive court).

[21] *Pizzichili*, 1999 WL 33100141, at *3. As a technical matter, the statutory language does not preclude a spouse from receiving alimony if she is cohabitating at the time of the interim or permanent alimony hearing. But as a practical matter, on day one after the alimony order is entered, she would be precluded from receiving "future" alimony as a recipient of alimony.

[22] States vary in their treatment of the effect of cohabitation on alimony:

> Some treat cohabiting relationships as the equivalent of marriage for this purpose. These states terminate the award when the obligee shares living quarters with a person of the opposite sex, just as prevailing law terminates alimony when the obligee remarries. Other states treat cohabitation relevant only as evidence, not necessarily dispositive, of the obligee's financial needs. This second group

7

Husband's remaining arguments relate to the Family Court's calculation of alimony. A party may be awarded alimony if the Family Court determines she is dependent upon the other party after consideration of the factors set forth in § 1512(c).[23] Husband contends that the Family Court erred in its consideration of Wife's ability to meet her financial needs because her monthly medical expenses of $300 and health insurance of $715 were unreasonable and unsupported by the record. As to the medical expenses, Wife testified she had previously taken medications for high blood pressure and cholesterol, but that she was not currently buying any medications because she could not afford to do so. Wife did not know the cost of the medications. As to the health insurance expense, Wife submitted a form showing the monthly premium for COBRA benefits would be $715. Wife testified, however, that she had no current monthly

---

divides further between the states willing to presume that cohabitation reduces the obligee's financial need, and those requiring evidence that the cohabiting oblige in fact derives such financial benefits before terminating the award.

PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION § 5.09 cmt. a (2002); *see also* Steven K. Berenson, *Should Cohabitation Matter in Family Law?*, 13 J. L. & FAM. STUD. 289, 303–04 (2011); Evan J. Langbein, *Post-Dissolution Cohabitation of Alimony Recipients: A Legal Fact of Life*, 12 NOVA L. REV. 787, 788 (1988). Whether Delaware's current statute strikes the correct balance between the competing public policy concerns raised by alimony, remarriage, and cohabitation is a matter for the General Assembly.

[23] 13 *Del. C.* § 1512(b). The factors are: (1) The financial resources of the party seeking alimony, including the marital or separate property apportioned to him or her, and his or her ability to meet all or part of his or her reasonable needs independently; (2) The time necessary and expense required to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment; (3) The standard of living established during the marriage; (4) The duration of the marriage; (5) The age, physical and emotional condition of both parties; (6) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party; (7) The ability of the other party to meet his or her needs while paying alimony; (8) Tax consequences; (9) Whether either party has foregone or postponed economic, education or other employment opportunities during the course of the marriage; and (10) Any other factor which the Court expressly finds is just and appropriate to consider.

insurance expenses because she was still waiting to receive paperwork from Husband's employer. Husband argued at the ancillary hearing that it was unknown whether Wife had declined COBRA coverage or whether Husband's employer had failed to provide the necessary paperwork.

In its decision awarding alimony, the Family Court accepted Wife's claimed monthly medical expenses of $300 and health insurance of $715 without addressing the parties' arguments regarding the reasonableness of those expenses.[24] Based upon our review of the record, we cannot determine the basis for the Family Court's conclusion that these expenses were reasonable. We therefore remand this matter to the Family Court to explain how it concluded that Wife's monthly medical expenses of $300 and health insurance of $715 were reasonable, or to make a determination of the reasonableness of the claim based upon an expanded record.

Husband next claims that Wife, who has a bachelor's degree in education and is pursuing a master's degree, is underemployed and has failed to maximize her earnings. The Family Court attributed Wife with income of $29,508 per year based on her thirty hour a week job at Head Start and the unemployment she collects over the summer. The Family Court acknowledged Wife's educational history, while noting that Wife had not passed the exam for her teacher's certification. Based upon Wife's testimony that it was difficult for her to find a flexible job giving her the availability to meet the needs of the parties' child with Down Syndrome, the Family Court concluded that Wife had

---

[24] The Family Court did reduce Wife's claimed monthly expenses by $865 after concluding that other expenses were overly inflated or should be reduced in light of Wife's large car expense.

9

maximized her earnings. Husband does not dispute that the parties' eldest child has Down Syndrome and requires care. The Family Court did not err in concluding that Wife had maximized her earnings.

Husband next argues that it was unreasonable for the Family Court to conclude that Wife was eligible for alimony for eight years, six months, and seven days because Wife was employed as a teacher and earning a master's degree. A dependent person shall be eligible for alimony for a period not to exceed 50% of the term of the marriage.[25] The parties were married for seventeen years and fifteen days. The Family Court's determination that Wife was eligible for alimony for eight years, six months, and seven days falls within the time period set forth in § 1512(d) and is supported by the record.

Husband next claims that the Family Court erred in concluding Wife's bachelor's degree, which was earned during the marriage, was irrelevant to its determination of alimony. In considering whether either party made a financial or other contribution to the other party's education or earning capacity under § 1512(c)(6), the Family Court found this factor irrelevant because neither party alleged that they contributed to the other party's education or training. There is no evidence that Husband contributed to Wife's bachelor's degree. Accordingly, the Family Court did not err in finding this factor irrelevant. We note that the Family Court did consider Wife's bachelor's degree in considering whether Wife had maximized her earnings.

---

[25] 13 *Del. C.* § 1512(d).

Husband also argues that the Family Court erred in its consideration of his ability to meet his needs while paying alimony because it considered his past earnings as well as his current earnings. The Family Court averaged Husband's anticipated income for 2015 ($51,840 based upon paystubs for the first three months of 2015) and his earnings from 2014 ($72,282) and 2013 ($100,832) to calculate earnings of $74,985 for Husband. Wife's undisputed testimony was that Husband always worked overtime during the marriage and had not earned less than $85,000 a year since 2009. Husband earned $102,150 in 2012. Husband testified that he could no longer work overtime due to mass hiring by his employer, but did not offer any evidence in support of this claim.

As the Family Court explained in its order denying Husband's motion for reargument, it averaged Husband's earnings because Husband had a history of making substantially more than his projected earnings for 2015, he did not offer any evidence to support his claim that he could no longer work overtime, and he could easily go back to earning twice his current income as soon as the Family Court entered the alimony order. The Family Court's decision to average Husband's earnings is supported by the record.

## V.    Conclusion

We find all of Husband's arguments on appeal to be without merit, except for his claims relating to Wife's medical and health insurance expenses. The judgment of the Family Court is thus affirmed in part. We remand this matter to the Family Court for an explanation as to how it concluded that Wife's monthly medical expenses of $300 and health insurance of $715 were reasonable, or to make a determination of the reasonableness of the claim based upon an expanded record. Jurisdiction is retained.

11